**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
**THIRD DIVISION**

UNITED STATES OF AMERICA,                                       Criminal No. 06-193 RHK/AJB

           Plaintiff,

v.                                                              **REPORT AND RECOMMENDATION**

CARL LEE RICHARDSON,

           Defendant.

    Tracy T. Braun, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

    Jordan S. Kushner, Esq., appearing for the defendant, Carl Lee Richardson.

    This action came on for hearing before the Court, Magistrate Judge Arthur J. Boylan, on July 24, 2006, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. The Court issued an Order on Motions dated July 31, 2006, reserving defendant's motion to suppress search and seizure evidence [Docket No. 19] and motion to suppress statements [Docket No. 20] for submission to the district court on report and recommendation. Additional testimony on defendant's motion to suppress search and seizure evidence was presented at continued hearing on August 7, 2006.

    Based upon the file and documents contained therein, along with witness testimony, exhibits, and memorandums of counsel, the Magistrate Judge makes the following:

**Findings**

    **Pedestrian Stop and Statements.** On October 10, 2005, during the early morning hours, St. Paul Police Officer Jamie Sipes was on routine patrol duty in a residential area in the eastern

district in St. Paul.  At around 1:30 a.m. Sipes was stopped at the intersection of Cottage and Forest, facing east on Cottage, when he observed a vehicle heading southbound, coming towards him on Forest.  When the vehicle was approximately two blocks from the officer's location the car appeared to stop suddenly, as indicated by a dipping the motion of the headlights.  No traffic offense was observed by the officer.  Nonetheless, Officer Sipes turned north onto Forest to further investigate, and as he approached the vehicle he saw the driver get out, walk around the front of the car, and head south on the sidewalk.  The car was parked on the street in the middle of the block, behind a construction dumpster and in front of a residence on Forest.       There were no other available street parking spaces in the immediate vicinity.  There were streetlights in the area, but it was dark where the car was parked.  The officer drove past the vehicle, noting that the person who exited the car, the defendant in this matter, was a black male wearing dark clothing.  Officer Sipes briefly lost sight of the man as he made a u-turn on Forest and drove back to speak with the man.  The officer stopped in the street and approached the individual while shining a light on him.  Sipes did not expressly order the man to stop, but the officer stated that he would like to speak with him and asked why he had abruptly stopped his vehicle and got out when he saw the police car.  In response, the defendant did not deny that he had seen the squad car, but he stated that he did not have a valid drivers license and did not want to get a ticket.  When asked where he was going, the defendant stated that he was going to his girlfriend's home near Frank St. and Orange Ave., approximately six blocks from where he had parked.  The officer asked for identification and the man indicated that he did not have a drivers license or other picture ID, though he did identify himself as Carl Lee Richardson.  Officer Sipes advised the defendant that he would be receiving a ticket for driving without a license and instructed him to take a

seat in the back of the squad car. For safety purposes the officer frisked the defendant before placing him in the squad car to ensure that he was not carrying a weapon. The officer did not look through the defendant's wallet to obtain identification or other information.

With the defendant in the back seat, the officer backed up his squad car to shine the headlights on the defendant's parked vehicle for the purpose of getting the license plate number and to see if anything had been thrown out of the car. The officer ran a computer check on the vehicle registration and determined that the vehicle had not been reported stolen and was properly licensed and registered to the person whom defendant had identified as the owner. Officer Sipes got out of the squad car to look around the scene where defendant had been when the officer had briefly lost visual contact with him. The officer walked onto the yard at the Forest residence where defendant had parked and observed a black revolver laying on the ground near a tree. The officer concluded that the handgun had recently been placed by the tree because it was warm to the touch and there was no dew on it, unlike other metal objects he observed in the yard. Officer Sipes then called a canine officer to bring a dog to the scene to track the source of the weapon. The dog appeared to establish a connection between the defendant's vehicle and the gun, and based upon the dog's reactions, the canine officer opined that the gun had recently been placed where it was found. Officer Sipes asked defendant whether he had any prior felony arrests, to which Mr. Richardson replied that he did have a felony record. Defendant was not placed in handcuffs prior to that time.

**Interview Statements.** Mr. Richardson was arrested and detained at the Ramsey County Law Enforcement Center. St. Paul Police Sgt. Patricia Englund was assigned to further

investigate the case and in that capacity she reviewed reports, as well as the defendant's driving record and his criminal history record. Sgt. Englund's investigation revealed that Richardson had a suspended drivers license and had more than one conviction for a violent offense. On October 10, 2006, at approximately 1:10 p.m. Sgt. Englund met with defendant Richardson for purposes of an interview. The defendant was escorted to an interview room at the Ramsey County Law Enforcement Center where Englund was waiting for him. The officer was in plain clothes with her identification badge displayed. She was not carrying a sidearm. After identifying herself, the officer informed the defendant of the grounds for his arrest and she proceeded to fill out an advise of rights form. (Hearing Exh. No. 2). Sgt. Englund first obtained biographical data, including the defendant's full name, his age and date of birth, his address and phone number, and education information. Englund explained that she would be reading each of defendant's rights from the form and defendant indicated that he understood, but would not sign or initial anything at that time. The officer laid the document on the table and read each of the rights to the defendant, while turning the paper to allow defendant to see the written rights as they were being read to him. Sgt. Englund wrote "Refused" after each of the rights recited on the document and on the document signature line. Nonetheless defendant was specifically advised that he had the right to remain silent and refuse to answer questions; that any statements could be used against him; that he had the right to talk with a lawyer and have a lawyer present during questioning; and that he had the right to a court-appointed attorney. Though defendant stated that he would not initial or sign the advice of rights, he did indicate that he understood each of his rights and was willing to talk with Sgt. Englund. He asked why he had been arrested and was told that he was charged with being a felon in possession of a firearm. In the ensuing conversation the defendant stated that he had been driving home in a

4

friend's car; that he stopped because he did not want to get a ticket; and that he knew he did not have a valid drivers license. Approximately 10 minutes into the interview Sgt. Englund stated that firearms could be tested for DNA residue and she asked defendant whether he would consent to providing a DNA sample. At that time defendant asked to be allowed to talk with an attorney and questioning ceased. The interview was digitally recorded. (Hearing Exh. No. 1).

**DNA Warrant.** On October 11, 2005, Ramsey County District Court Judge Marybeth Dorn issued a search warrant authorizing a search of the person of Carl Lee Richardson. (Hearing Exh. No. 3). The search warrants particularly identified the object of the warrant as a DNA sample to be obtained by oral swab. The warrant was issued on the basis of probable cause evidence contained in an Affidavit of St. Paul Police Sgt. P.T. Englund, including information obtained as the result of the observations and evidence recovered by Officer Sipes on the morning of October 10, 2006, as well as Sgt. Englund's review of records and reports, and defendant's own statements to officers.

Based upon the foregoing Findings, the Magistrate Judge made the following:

## Conclusions

**Pedestrian Stop.** Suppression of evidence obtained pursuant to the pedestrian stop of defendant Carl Lee Richardson on October 10, 2005, including physical evidence, statements, and identifying information, is not required. Defendant insists that his person was seized when Officer Sipes shined a bright light on him and ordered him to stop by using a tone of voice that caused the defendant to reasonably believe that he was not free to leave the scene. The court concludes that the defendant was not seized upon initial encounter with the officer and that evidence that was subsequently

recovered, including identification evidence, was lawfully obtained.

The Fourth Amendment prohibition against unreasonable search and seizure is not violated when an officer merely approaches a person in a public area and asks questions. United States v. Vera, __ F.3d __, 2006 WL 2265568, *2 (8th Cir., Aug. 9, 2006)(citing United States v. Drayton, 536 U.S. 194, 200, 122 S.Ct. 2105 (2002)). Police questioning is not a seizure, and the encounter is consensual, so long as a reasonable person would feel free to disregard the officer. Id. (citing Florida v. Bostick, 501 U.S. 429, 434, 111 S.Ct. 2382 (1991)). Furthermore, it is not a seizure for an officer to approach a person in a public place, identify himself as an officer, and ask the person to step aside to talk. Id. (citing Florida v. Rodriguez, 469 U.S. 1, 5-6, 105 S.Ct. 308 (1984). Indeed, a request for identification is not a seizure unless the officer conveys the message that compliance is required. Id. (citing Bostick, 501 U.S. at 435). A seizure occurs only when an officer uses physical force or some other show of authority that somehow restrains a person's liberty. Id. (citing Bostick, 501 U.S. at 434). There is no requirement that the citizen be advised of the right to refuse to speak with the officer and the willingness of many people to talk with police when asked does not negate the consensual nature of the encounter. Id. (citing Drayton, 536 U.S. at 205).

Defendant's argument relies upon a factual determination that the initial encounter with Officer Sipes entailed coercion and therefore was not consensual. The court finds no basis for such a determination. Shining a bright light on the defendant in the side street darkness at 1:40 a.m. was reasonable and prudent and was not an inherently coercive act. The officer's mere request to speak with the defendant, accompanied by a question as to why he had stopped so abruptly, may have been intimidating in light of the response given by the defendant, *i.e.* he did not have a drivers license, but

6

such inquiry would not be implicitly threatening or coercive to a reasonable person who merely took advantage of an available parking spot. The initial police encounter with the defendant was consensual and he was not rendered seized as a result of the officer's conduct or commands. With respect to defendant's contention that the officer's appearance in a marked squad car, wearing a uniform and a badge, and having a visible gun, contributed to the involuntary nature of the encounter, those factors have no bearing because they are part and parcel of street law enforcement. United States v. Vera, __ F.3d __, 2006 WL 2265568 at *4 (citing United States v. Drayton, 536 U.S. at 205). Indeed, the non-coercive nature of the encounter is reinforced under circumstances whereby the officer did not draw his weapon and there was no application of force or physical contact. Id.

In addition, defendant Richardson's response[1] to Officer Sipes's initial question as to why he had suddenly stopped constituted an objective and particularized basis for suspecting that he had been engaged in criminal activity and provided reasonable suspicion on which to justify detention and investigation. Further investigatory detention for purposes of determining identity and criminal history was not unlawful. United States v. Barry, 394 F.3d 1070, 1078 (8th Cir. 2005). Suppression of evidence based upon unlawful seizure under the Fourth Amendment is not required. With respect to the handgun discovered by Officer Sipes in the yard at the Forest residence, the weapon was clearly abandoned and in plain view and was not seized in violation of defendant Richardson's Fourth Amendment rights.

**Statements.** Defendant's statements Officer Sipes with respect to his identity and

---

[1] Defendant stated that he didn't have a valid driver's license and didn't want another ticket. (July 24, 2006, hearing transcript, page 15).

criminal history were not the result of unlawful interrogation and suppression is not required. The defendant voluntarily provided his name when asked by the officer, and he was not in custody at that time. As for Mr. Richardson's arrest record and criminal history, such information was requested and provided prior to defendant's arrest, and in any event would have been discovered in the context of a constitutionally permissible investigatory detention.

    Defendant Richardson's statements to Sgt. Englund in an interview following his October 10, 2005, arrest were provided voluntarily and were not obtained in violation of defendant's constitutional rights, either directly or as fruit of an unlawful stop. Defendant was properly advised and understood his rights pursuant to <u>Miranda</u>, (Hearing Exh. Nos. 1 and 2). No threats or promises were made to induce defendant to make statements to the officer, and defendant's interview statements were not obtained as a consequence of coercion, manipulation, or promises (or inferences) that he would be given lenient treatment. In addition, to the extent that defendant provided biographical information prior to receiving the <u>Miranda</u> advisory, suppression is not required because such information is properly solicited. Suppression of defendant Richardson's interview statements is not required.

    **Search Warrant.** Suppression of evidence obtained by search and seizure pursuant to warrant to obtain a DNA sample from the person of Carl Lee Richardson (Hearing Exh. No. 3) is not required. Evidence seized pursuant to the warrant was not the fruit of an unlawful stop and the warrant was not otherwise unlawfully obtained in violation of the constitutional rights of defendant Richardson. The search warrant was issued on October 11, 2005, and was based upon sufficient probable cause as determined by Ramsey County District Court Judge Marybeth Dorn. The warrant properly and sufficiently identified the location to be searched and the object of the search. The warrant application

and affidavit was prepared by St. Paul Police Sgt. P.T. Englund.  Each application and affidavit on its face contains sufficient probable cause to support issuance of the requested warrant to search the described location and does not contain information obtained as a result of an unlawful arrest or as a result of unlawful interrogation of the defendant by law enforcement officers.  There is no basis for suppressing evidence obtained pursuant to the above identified search warrant and the motion for suppression of search and seizure evidence should therefore be denied.

Based upon the foregoing Findings and Conclusions, the Magistrate Judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1.  Defendant Carl Lee Richardson's Motion to Suppress Evidence from Search and Seizure be **denied**  [Docket No. 19]; and

2.  Defendant Richardson's Motion to Suppress Statements be **denied** [Docket No. 20].


Dated:     August 30, 2006

   s/ Arthur J. Boylan
Arthur J. Boylan
United States Magistrate Judge


Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection.  This Report and Recommendation does not constitute an order or judgment from the

District Court and it is therefore not directly appealable to the Circuit Court of Appeals.  Written objections must be filed with the Court before September 11, 2006.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.